IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAYMOND FRANCO,

        Petitioner,

v.                                                                CIV 00-412 MV/KBM

LAWRENCE TAFOYA, et al.,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Raymond Franco's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody, *Doc. 1*,[1] and Respondents' Answer thereto, *Doc. 9*. Because he filed after the effective date of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards[2] apply to this case. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *petition for cert. filed 5/10/00;* Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.*

Petitioner raises one claim that is not cognizable in federal habeas[3] and seven other claims

---

   [1] For ease of reading, I have not inserted any "(sic)" references.

   [2] A federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. ___ , 120 S.Ct. 1495 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000).

   [3] In his sixth claim, Petitioner argues that his placement in medical isolation for hepatitis constituted cruel and unusual punishment. *See Doc. 1 at ¶ F.* However, claims challenging

that fall into two categories: (1) sufficiency of evidence and (2) a substitute judge having taken the verdict. Having carefully considered the entire record and relevant law, I find the petition without merit, and recommend that it be denied and the action be dismissed with prejudice.

### I.  Procedural Background

### A.  Victim's and Petitioner's Versions of Events

The events took place on June 19, 1998. The crime victim was Petitioner's former foreman. They had a dispute over whether Petitioner was owed money. Beyond that, the case presented a "he said/he said" situation.

According to the victim, Petitioner came to his house and kicked him with steel-toed boots until he was rendered semi-conscious. Petitioner then called his relative, Jesus Avitia, and asked him to come to the scene. Avitia did so and armed himself with a knife from the victim's kitchen. He and Petitioner then proceeded to tie the victim's hands behind his back; demand his money and wallet; take his wallet, bank card, and PIN number; put him in the toolbox of his own truck; and drive away. Within minutes, the foreman managed to escape by slipping out of his bindings and getting out of the toolbox when the truck slowed for a stop sign. The foreman summoned help. Soon thereafter, the police located the foreman's truck near a house where Avitia's truck was parked. They put it under surveillance and stopped Petitioner shortly after he left the house and entered the foreman's truck and drove away. *See Answer, Exh. C at 2-4.*[4]

---

conditions of confinement are not cognizable in federal habeas corpus. *E.g., Rael v. Williams,* ___ F.3d ___, 2000 WL 1051845 (10th Cir. 7/31/00) (§ 2241); *Oyler v. Allenbrand,* 23 F.3d 292, 299 (10th Cir. 1994) (§ 2254).

[4] Unless otherwise noted, citations to exhibits refer to those attached to the Answer. The portions of the record attached to the Answer do not contain a brief by the State setting forth its version of the facts on direct appeal. Apparently, the direct appeal was decided solely on the

As argued by counsel on direct appeal, Petitioner's version at trial was that no crime had been committed because the incident involved a dispute over money that degenerated into a fight. The foreman allegedly attacked him first, and Petitioner struck back in self defense and left. He went to the house where the foreman's truck was found by the police. Others in this house supposedly gave him permission to use a truck parked "out front" to go buy beer. He claimed that he was unaware it was the foreman's truck. Franco's counsel challenged the victim's credibility with inconsistent statements and the lack of other physical evidence.[5] *See Exh. C. at 3-5; Exh. E. at 6-7.*

In this action, Petitioner's version differs from the way counsel characterized the testimony on appeal, but that may simply be a function of how counsel chose to brief the issue. Here, Petitioner asserts that no crime was ever committed – the incident involved a simple misunderstanding over money where the victim, upset at losing the fight, retaliated by fabricating the "kidnapping" scenario.[6] He also asserts that the victim either could have been or was put into

---

briefs filed by Petitioner's counsel.

[5] Petitioner challenged the foreman's credibility and his version of the facts for a number of reasons: the State did not introduce telephone records showing the phone call Petitioner made to Avitia; before trial the foreman said that there was one assailant and later testified that there were two; the foreman initially maintained that Petitioner had been fired but the employer's testimony bore out Petitioner's assertion that he voluntarily quit; while there was blood in the foreman's house, there was none found on petitioner's boots or on the foreman's truck or in the toolbox; the lack of fingerprints at the foreman's house; only two sets of footprints at the foreman's house instead of three; and there was no explanation how Avitia's truck was moved from the foreman's house to the other residence. *See Exh. E at 6-7.*

[6]  Petitioner still insist to this date that there was no one conspired to commit Kidnapping or any other crime[;] there was a discussion prior to this Incident which took place and all it was for him (victim) to help and assist Petitioner so he could collect money that was still owed to him because his forman fail to put his (petitioner)

his own truck to "cool him down' after their fight.  In some places in his *pro se* pleadings this

"cool down" theory is discussed hypothetically and in other places as fact,[7] but it is not necessary

to resolve the discrepancy in order to analyze his claims.

### B.  Trial & Direct Appeal

Petitioner was charged with armed robbery, kidnapping, aggravated battery with a deadly

weapon, unlawful taking of a motor vehicle, and conspiracy to commit kidnapping.  *Exh. A*.  There

was a pretrial motion to dismiss the kidnapping charge, which was denied.  *See Exh. C at 5*.

According to Petitioner, the aggravated battery felony count was "clarified" before trial.  Based

on the way the verdict reads, it appears Franco means that the jury was given a lesser

misdemeanor charge on the battery count.  *See Exh. I at ¶ C; Exh. K at ¶ 8; Doc. 1 at ¶ C*.  All of

---

        name on the work time sheets where they both work and that is all
        that insued but after he victim provoke the fight and lost it, wants
        to be a sore loser because Petitioner never conspired with anyone
        to commit any crime against him (victim)."

*Exh. I at ¶ E; see also Exh. K at ¶ 10; Doc. 1 at ¶ E*.  In another section of these pleadings,
Petitioner argues that the victim "was a sore loser and he was going to make something up to
retaliate against petitioner."  *Exh. I at ¶ D; Exh. K at ¶ 9; Doc. 1 at ¶ D*.

    [7] In one section, Petitioner argues that the prosecution's theory that the victim was taken
for ransom or service was not supported by the evidence because, among other things, the
victim's truck was just a few blocks from where he was assisted by police, and "the victim was
never taken for anything or reason then **for maybe** to ride around and see if he would cool down
after being in a fight and to cool him down."  *Exh. I at ¶ B (emphasis added); see also Exh. K at
¶¶ 6-7 ; Doc. 1 at ¶ B*.
        In another section, Petitioner asks how he could have been convicted of:
        taking a motor vehicle without the owner consent when the owner
        himself is in the vehicle himself too, therefore it cannot be nothing
        but Joy Riding although he (owner) was not driving still he was in
        his own vehicle[;] the reason he was not driving his own vehicle
        was because he did not look proper to be driving it, i.e., and only to
        cool off after the fight because he was a sore loser and he was
        going to make something up to retaliate against petitioner.
*Exh. I at ¶ D; Exh. K at ¶ 9; Doc. 1 at ¶ D*.

the charges were unsuccessfully challenged by a motion for a directed verdict at trial. *Exh. C at 6.* The jury found Petitioner guilty of all of counts as charged, except for the battery count. It did not find that Petitioner used a "deadly weapon" and instead found him guilty of the misdemeanor charge of aggravated battery without great bodily harm. He was sentenced to a total of 31 ½ years, 11 ½ of which were suspended by the trial judge. *Exh. A; Exh. C at 1.*

On direct appeal counsel raised three issues in the docketing statement. *See Exh. C.* The New Mexico Court of Appeals proposed summary affirmance, *Exh. D,* which was opposed in a brief that clarified the basis of his claims, raised them as federal constitutional claims, and moved to amend the docketing statement to add a fourth claim.[8] The court denied each of the four claims on the merits and affirmed the convictions in an unreported opinion. *See Exh. F.* The New Mexico Supreme Court denied certiorari on October 1, 1999 in an unpublished opinion. *State v. Franco,* 128 N.M. 149 (N.M. 1999) (table); *see also Exh. H.*

### C. State Habeas Action

Proceeding *pro se,* Petitioner filed a petition for a writ of habeas corpus in the state court on December 20, 1999. *Exh. I.* There he raised a total of eight issues. At least five of his were new arguments not raised on direct appeal, and one of the five was a civil rights claim. The district court decision denying the petition contains a brief description of each of the claims and in

---

[8] The four claims that were presented for review were: (1) the trial judge erred in refusing to dismiss the kidnapping charge because the evidence was insufficient to establish that the foreman was "held for a specific purpose;" (2) the jury instruction on kidnapping was "vague" because it did not specify what "service" the foreman was being held for and was "erroneous" because it did not otherwise require the jury to unanimously agree on what set of facts constituted the element "hold for specific purpose;" (3) the evidence was not sufficient to support any of the convictions because the foreman's testimony was not credible; and (4) the court improperly admitted the officer's lay opinion about the shoe print matching the codefendant's shoes. *Exh. E.*

two sentences disposed of all of them on the merits saying:

> It is the court's determination that the foregoing was raised both in the trial court and in the appellate court, and none of it is a basis for the relief prayed for.
> IT IS THEREFORE the order of the court that the petition for writ of habeas corpus be and is hereby denied based on the court's review of the allegations therein.

*Exh. J.*

On petition for certiorari, Petitioner raised the same eight arguments and also claims that he should have been given an attorney and an evidentiary hearing. *Exh. K.* The New Mexico Supreme Court denied certiorari on January 27, 2000. *Exh. L.* Petitioner then filed this action on March 20, 2000 raising the same seven issues that are cognizable in habeas. *See footnote 3.*

## II.  "Wrongful Charge/Conviction" (Sufficiency of Evidence) Claims

It is easier to succinctly analyze Petitioners claims if they are not necessarily addressed separately or in the order he raises them.  Petitioner's third claim is mainly rhetorical.  He notes that the aggravated battery charge was "clarified" and asks why all of the charges against him were not similarly "clarified."  By this, I gather he believes all of the charges should have similarly been dismissed, or reduced to a lesser charge, or the jury should have been instructed on a lesser charge. *Exh. I at ¶ C; Exh. K at ¶ 8; Doc. 1 at ¶ C.* In his eighth claim, he argues that there was insufficient evidence on all of the counts to have justified submitting any of the charges to the jury. *See Exh. I at ¶ G; Exh. K at ¶ 13; Doc. 1 at ¶ H.* In his first, second, fourth and fifth claims he elaborates why he believes the evidence was insufficient, all of which are based on his version of the events.[9]

---

[9] His fifth claim asserts there was no crime because the incident involved a dispute over money that degenerated into a fight and the foreman, who lost the fight, was a "sore loser" and

6

### A. Standard of Review

The New Mexico Court of Appeals relied on the foreman's version of the facts in rejecting the sufficiency claims on direct appeal holding that the

> evidence was sufficient to support his convictions for armed robbery, kidnapping, aggravated battery, unlawful taking of a motor vehicle, and conspiracy to commit kidnapping. Although Defendant testified to a different version of the events, the jury was not obligated to believe Defendant's version.

*Exh. F at 8.* However, the appellate decision did not mention the elements of these offenses in its analysis. Also, while the trial judge's finding on state habeas that the new claims had "no basis" is a decision on the merits, the trial judge did not provide his reasons for so finding. I must therefore review the record independently. *See Aycox v. Lytle,* 196 F.3d 1174, 1176 (10th Cir. 1999).

The Tenth Circuit has not resolved whether sufficiency of evidence claims are resolved as questions of law or fact under AEDPA. *Valdez v. Ward,* 219 F.3d 1222, 1237 (10th Cir. 2000).

---

fabricated the kidnapping scenario.
  In his first claim, Petitioner argues that he was wrongfully charged with/convicted of armed robbery because (1) a boot is not a weapon, and (2) the victim could not have been frightened of the knife because it was only used to cut the towel to bind his hands and there were "no threats of any kind made to him of committing any harm nor hurting him in any way shape or form" when the victim turned over his wallet and ATM card. On these facts, Petitioner argues that the most he could have been charged with was simple assault and simple robbery. *Exh. I at ¶ A; see also Exh. K at ¶¶ 1-4; Doc. 1 at ¶ A.*
  He also contends in his second claim is that he was wrongfully convicted of kidnapping – since the PIN number was available, the theory that the victim was taken for ransom or service of any kind was not shown. The victim could have been taken for a ride to cool him down. The jurors should not have had to decide whether the facts amounted to "kidnapping or false imprisonment," that should have been "clarified" by the judge before trial. *Exh. I at ¶ B; Exh. K at ¶¶ 6-7; Doc. 1 at ¶ B.*
  His fourth claim is that since the foreman was in the vehicle to cool off, Petitioner could not as a matter of law "unlawfully taken" the foreman's truck without his consent. *Exh. I at ¶ D; Exh. K at ¶ 9; Doc. 1 at ¶ D.*

Nevertheless, the relevant inquiry is whether, after viewing all of the evidence "in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis original). This is the same standard applied by the New Mexico appellate courts for both a sufficiency of the evidence claim or on motions for a directed verdict.[10]

### B. Analysis

To the extent Petitioner asks this Court to credit his version of what transpired, the claims afford no basis for habeas relief because review under *Jackson* is highly deferential. Circumstantial evidence is sufficient to support a conviction. Moreover, a federal habeas court cannot weigh conflicting evidence or make judgments about witness credibility. Instead, I must presume that the fact finder resolved conflicting inferences in favor of the prosecution, even if the record does not reflect exactly how the conflicts were resolved.[11]

Here, the evidence in the light most favorable to the prosecution is the victim's version of the facts. Based on that version, I find there was sufficient evidence to avoid dismissal of the claims, to refuse instructions on lesser offenses, to submit the case to the jury, and to support its verdict. Consequently, I find that the state decisions are neither contrary nor unreasonable as

---

[10] *See Ex. F at 5, 8; see also e.g., State v. Rojo,* 126 N.M. 438, 444-445 (N.M. 1999) (sufficiency); *State v. Kersey,* 120 N.M. 517, 520 (N.M. 1995) (*Jackson*); *State v. Hernandez,* 115 N.M. 6, 25 (N.M. 1993) (directed verdict); *State v. Sutphin,* 107 N.M. 126, 130-31 (N.M. 1988) (*Jackson*); *State v. Prince,* 126 N.M. 547, 549 (N.M. App. 1998) (directed verdict).

[11] *E.g., Messer v. Roberts,* 74 F.3d 1009, 1013 (10th Cir. 1996); *Stallings v. Tansy,* 28 F.3d 1018, 1020 (10th Cir. 1994); *Kelly v. Roberts,* 998 F.2d 802, 807 (10th Cir. 1993); *Grubbs v. Hannigan,* 982 F.2d 1483, 1486 n.3 (10th Cir. 1993); *Tapia v. Tansy,* 926 F.2d 1554, 1562 (10th Cir.), *cert. denied,* 502 U.S. 835 (1991); *Cordoba v. Hanrahan,* 910 F.2d 691, 694 (10th Cir.), *cert. denied,* 498 U.S. 1014 (1990).

defined by AEDPA.

Armed Robbery. "The elements comprising our armed robbery statute include: asportation of property, from the victim or from his immediate control, intending to permanently deprive him of the property, while armed with a weapon, or with force or violence, or threat thereof." *State v. McGruder,* 123 N.M. 302, 309 (N.M. 1997); *see also* NMSA § 30-16-2. The foreman's version was that after Avitia "armed himself" with a knife, he and Petitioner tied the foreman's hands behind his back, demanding the foreman's money and wallet. These facts are sufficient to establish armed robbery by threatened force.

Taking A Motor Vehicle. The crime of unlawful taking of a motor vehicle consists of taking a vehicle without the owner's consent and with criminal intent. The foreman's testimony that he was tied and put in the toolbox of his truck by Petitioner is sufficient to support a finding that the truck was taken without his consent. *See McGruder,* 123 N.M. at 309; NMSA § 66-3-504; UJI 14-1660.

Kidnapping. "Kidnapping is the unlawful taking, restraining transporting or confining of a person by force, intimidation or deception, with intent . . . that the victim be held to service against the victim's will." NMSA § 30-4-1(A). The jury was instructed that it had to find Petitioner held the foreman "for the purpose of making [him] do something or for the purpose of keeping [him] from doing something." *See Exh. F at 6; UJI 14-403(2); see also State v. Ortega,* 112 N.M. 554, 570 (N.M. 1991). The phrase "hold for service" includes "forcing or deceiving a victim into assisting the kidnapper in carrying out the objective of robbery." *State v. Foster,* 126 N.M. 646, ___, 974 P.2d 140, 149 (N.M. 1999). Moreover, the New Mexico Supreme Court has held that

> an individual's intent is seldom subject to proof by direct evidence, intent may be proved by circumstantial evidence. . . . Thus, to prove the intent element of kidnapping, we have allowed a jury to infer, from evidence of acts committed at some later point during the commission of a kidnapping, that the necessary criminal intent existed at the time the victim first was restrained.

*State v. Allen,* 128 N.M. 482, ___, 994 P.2d 728, 753 (N.M. 1999) (quotations and citations omitted), *cert. denied,* 120 S.Ct. 2225 (2000).

On direct appeal, the New Mexico Court of Appeals specifically rejected the argument that because Petitioner had the PIN number there was no need to "hold" the foreman for a "service." It identified a number of "common sense" theories such as having the foreman withdraw the money for them, prevent the foreman from calling the bank and deactivating the card, prevent the foreman from contacting the police, or making sure the foreman gave them the correct PIN number. All of these inferences are supported by the foreman's version. Thus, any rational juror could have found Petitioner was holding the foreman to make him do something or to keep him from doing something that was connected with the robbery.

<u>False Imprisonment</u>. False imprisonment "is the intentional confining or restraining of another without that person's consent and with the knowledge on the part of the one restraining that he or she has no authority to confine or restrain." *State v. Fish,* 102 N.M. 775, 779 (N.M. Ct. App. 1985). The additional element of "hold for service" takes a case beyond false imprisonment into kidnapping. *Id; see also Ortega,* 112 N.M. at 570-71. As I understand it, Petitioner is arguing that the trial judge either should have dismissed the kidnapping charge or submitted it to the jury as a false imprisonment charge. Because the evidence was sufficient on the "service" element, however, submission on the lesser charge was not required. Furthermore,

if Petitioner is claiming that a failure to give a lesser-included instruction based on *Fish* is grounds for habeas relief,[12] the argument is without merit. A state court's failure to give a lesser-included instruction in a non-capital case does not give rise to cognizable habeas claim even if erroneous. *See Lujan v. Tansay,* 2 F.3d 1031, 1036-37 (10th Cir. 1993), *cert. denied,* 510 U.S. 1120 (1994).

### III. Substitute Judge Taking Verdict Does Not Raise Federal Claim

Judge Alvin F. Jones was the trial and sentencing judge. In his seventh claim, Petitioner complains that a Judge Lynch took the return of the verdict for Judge Jones who "could not be present." When the parties were informed of the substitution, there were no objections. However, Petitioner states he is unaware "what Trial Judges Code of Ethics are on this matter" and now objects to the substitution. *See Exh. I at ¶ F.; Exh. K at ¶ 12; Doc. 1at ¶ G.*

Federal habeas corpus relief is not available for errors of state law. As such, the substitution must violate federal constitutional or statutory law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a). New Mexico's rules of procedure are similar to federal procedural rules and permit substitution during or after trial and permit the new judge to handle substantive matters. There is no error, and certainly no error of constitutional dimension, for a

---

[12] The facts in *Fish* are quite similar to one of Petitioner's arguments. In *Fish,* the victim claimed defendant raped her a knife point, then tied her arms and tried to drown her in a bathtub. She convinced him to cut the bindings and showed him how to use her ATM ("Amigo") card. He drove her to the bank, where she withdrew money and gave it to him. Defendant's version was that the sex was consensual, and characterized the money as a loan. He claimed the victim fabricated her version "to get even because of unrequited love." *Id.* at 778. He argued that the trial court erred denying his request to give the lesser-included instruction on kidnapping because "he had no purpose for taking victim along to the Amigo Bank. He already knew how to operate the Amigo card, and, therefore, had no purpose in taking the victim unless it was to prevent her from calling the police." The court agreed that it was error not to have provided the instruction, but only because it could not tell "whether the jury convicted defendant for kidnapping on the basis of [criminal sexual penetration], as opposed to the trip to the bank." *Id.* at 779-80.

temporary substitute judge to perform the act of taking a verdict and discharging a jury when it is wholly ministerial.[13]

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** the petition be denied and the action dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

---

[13] *See United States v. Gomez-Lepe,* 207 F.3d 623, 629-30 & n.7 (9th Cir. 2000) (noting that accepting and filing verdict polling, and perhaps polling the jury, is ministerial in contrast to "choosing a course of conduct when polling reveals an equivocal juror and raises the specter of a non-unanimous jury"); *United States v. Arnoldt,* 947 F.2d 1120, 1124 (4th Cir. 1991) (by consent of parties federal magistrate judges may take verdicts in criminal cases where district judge unavailable as additional duty not inconsistent with Constitution), *cert. denied,* 503 U.S. 983 (1992); *Fields v. Fitzpatrick,* 548 F.2d 105 (3rd Cir. 1997) (no constitutional right to be sentenced by trial judge; cited with approval in Judge Briscoe's concurrence in *United States v. Talk,* 158 F.3d 1067, 1073 (10th Cir. 1998)); FED. R. CRIM. P. 25 (allowing substitution); RULE 5-106 (permitting substitution during criminal trial if presiding judge unable to proceed); RULE 1-603 (permitting substitution to continue after conclusion of matter in civil case where presiding judge unable to proceed); Tracy A. Bateman, Annotation, *Substitution of Judge in State Criminal Trial,* 45 A.L.R. 5th 591 § 11 (1997 & Supp. 1999) (majority of state courts addressing issue do not find error where substituted judge just received verdict or dismissed jury); Glenn A. Guarino, Annotation, *Substitution of Judges Under Rule 25 of Federal Rules of Criminal Procedure,* 73 A.L.R. Fed 833 § 3 (1985 & Supp. 1999) (cases discussing why substitution under federal rules not unconstitutional).